UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
JUN 26 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

KARL HENRY LUCCE
*Petitioner*,

v.

PETER SUKMANOWSKI
in his official capacity as Acting Officer-in-Charge, Buffalo Federal Detention Facility.
PAMELA BONDI,
in her official capacity as United States Attorney General;
KRISTI NOEM,
in her official capacity as Secretary of the United States Homeland Security
*Respondents*.

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

25 CV 6342-V

## INTRODUCTION

1. My name is Karl Henry Lucce ("Petitioner").

2. Since I have entered the United States, I have been accorded the following immigration status: Legal Permanent Residency.

3. I am currently being detained by the Department of Homeland Security ("DHS") at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. I have been in immigration detention since June 14, 2024 , for a period of approximately twelve (12) months.

4. I was served with a Notice to Appear ("NTA") in September of 2023, charging me with removability based on my conviction(s) for Robbery in the first degree.

5. As such, I have been subject to mandatory immigration detention for approximately twelve (12) months while my removal proceedings/appeals are pending.

6. Without intervention from this Court, my detention will continue, as my immigration case is ongoing.

7. When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months.

8. DHS has not yet conducted a bond hearing to determine whether my continued detention is justified.

9. My immigration detention is unreasonably prolonged because I have been detained for more than six months without a bond hearing, and my detention will continue without a bond hearing unless this Court grants me relief.

10. Once it is established that immigration detention is unreasonably prolonged, the burden shifts to the government to prove by clear and convincing evidence that my continued detention is warranted either because I am dangerous or because I pose a flight risk.

11. Accordingly, I respectfully request that this Court issue a writ of habeas corpus and order the Respondent to release me from their custody because the Respondent cannot establish by clear and convincing evidence that my continued detention is warranted, and continuing to detain me violates my constitutional due process rights under the Fifth Amendment. In the alternative, I respectfully request this Court order a bond hearing where the Respondent bears the burden to

prove by clear and convincing evidence that my continued detention is necessary to prevent flight or danger to the community.

12. On October 30, 2024 an Immigration Judge sustained charges of removability against me and ordered me removed to Haiti.

13. I appealed my removal order to the Board immigration of appeals ("BIA") on or about November 27, 2024, the BIA denied my appeal.

14. I petitioned for review to the U.S. Court of Appeals for the Second Circuit ("Circuit Court"), which is still pending thereat.

15. In order to permit full judicial review of the claims herein and requested relief, I also respectfully request that the Court order the Respondent not to transfer me outside the jurisdiction of this Court pending consideration of this Petition.

## PARTIES

16. Petitioner Karl-Henry Lucce , is detained at the Buffalo Federal Detention Facility.

17. Respondent Peter Sukmanowski is sued in his official capacity as the Officer-in-Charge of the Buffalo Federal Detention Facility, at which Petitioner is currently detained.

18. Respondent Kristi Noem is sued in her official capacity as the Secretary of the Department of Homeland Security. She is the executive officer who has given authority to manage and control ICE. As such, she is the ultimate legal custodian of the petitioner.

19. Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States. She has authority over the Board of Immigration Appeals, and she has authority to do direct the Board to hold bond hearings and establish bond conditions.

## JURISDICTION AND VENUE

20. Jurisdiction is proper under the U.S. Constitution, U.S. CONST. art. I § 9, cl. 2 ("Suspension Clause"), and federal statutes 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2241 (habeas corpus); and 28 U.S.C. § 1651 (All Writs Act).

21. Additionally, this Court has jurisdiction to grant injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.

22. Federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging their detention by DHS, see *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

23. Furthermore, while 8 U.S.C. § 1226(e) bars judicial review of the discretionary denial of bond, it does not bar constitutional challenges to the bond hearing process. See, e.g., *Medley v. Decker*, No. 18-CV-7361 (AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019) (federal district courts have habeas jurisdiction to hear challenges to constitutional adequacy of bond hearing procedures); see also *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the [bond] process itself was constitutionally flawed are 'cognizable in federal court on habeas . . . .'") (quoting *Gutierrez–Chavez v. INS*, 298 F.3d 824, 829 (9th Cir.2002)).

24. Venue is proper in the U.S. District Court for the Western District of New York under 28 U.S.C. § 1391 because the Defendant is in this District; I am currently being detained within this District at the Buffalo Federal Detention Facility in Batavia, New York; and a substantial part of the events giving rise to the claims in this action took place in this District.

## STATUTORY FRAMEWORK

25. Congress has authorized DHS to mandatorily detain noncitizens who are convicted of certain crimes without the opportunity for a bond hearing. 28 U.S.C. § 1226(c).

26. The statute itself is silent on whether DHS is authorized to detain such noncitizens subject to mandatory detention for the entirety of their removal proceedings, regardless of how long such proceedings may take. See id.

27. When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months. *Matos v. Barr*, 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020).

## EXHAUSTION OF REMEDIES

28. There is no statutory exhaustion requirement for a petition challenging immigration detention. See *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014).

29. I am not required to exhaust administrative avenues to challenge my detention because the statutory authority that permits my detention provides no administrative vehicle for doing so. See 8 U.S.C. § 1231(a)(6); see also *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.") ( citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)).

## LEGAL ARGUMENT

**Procedural Due Process Requires that I Be Released or, at Minimum, Afforded a Constitutionally Adequate Bond Hearing at Which the Government Must Justify My Continued Detention**

30. The U.S. Supreme Court's opinion in *Zadvydas v. Davis* stands for the proposition that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V. Prolonged detention requires due process protections for individuals, even those whose "presence in this country is unlawful." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). Thus, as the Court noted, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." *Zadvydas*, 533 at 690.

31. By subjecting noncitizens like myself to mandatory immigration detention, 8 U.S.C. § 1226(c) permits indefinite detention, thus raising the very serious constitutional problem that the Court had cautioned against in *Zadvydas*.

32. Although the Supreme Court ruled in *Demore* that mandatory detention pending removal proceedings is not unconstitutional per se, the Court left open the question of whether the duration of such mandatory detention is subject to constitutional constraints. Such constitutional constraints can be found in the Fifth Amendment of the U.S. Constitution, which, as the Court recognized in *Demore*, "entitles [noncitizens] to due process of law in deportation proceedings." 538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

33. While the Supreme Court held in *Jennings v. Rodriguez*, 583 U.S. ____, 138 S. Ct. 830

(2018), that § 1226(c) does not require bond hearings in prolonged detention cases as a matter of statutory construction, it did not express any views on whether the U.S. Constitution itself requires a bond hearing, leaving it to the lower courts to address the issue of what process is due when detention is unreasonably prolonged.

**<u>My Detention Has Become Unreasonably Prolonged</u>**

34. In the wake of Jennings, the Western District of New York ("WDNY") has developed a two-step inquiry for evaluating procedural due process challenges to prolonged immigration detention. *Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019).

35. In the first step of the inquiry, the Court considers whether the detention has been unreasonably prolonged by weighing several distinct factors. Id. If the Court finds that the detention was unreasonably prolonged, it proceeds to step two of the inquiry, which involves identifying what process is due by considering the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Hemans*, 2019 WL 955353, at *5., see also *Hechavarria v. Sessions*, No. 15-CV-1058 (LJV), 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018). If the government has failed to provide the detained person with the procedural safeguards dictated by the *Mathews* factors, then the detained person's continued detention violates procedural due process. *Hechavarria*, 2018 WL 5776421 at *8-9.

36. To determine whether one's immigration detention is unreasonably prolonged, courts in this district have adopted the following multi-factor test articulated in *Cabral v. Decker*:

> [T]he length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will

> exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018).

37. The first factor, the length of immigration detention, is the most important factor. *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 797 (W.D.N.Y. 2019) (quoting *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018)).

38. Courts in the Second Circuit have "generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Ranchinskiy*, 422 F. Supp. 3d at 797 (quoting *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018)).

39. Moreover, in *Demore*, the Supreme Court heavily relied on the average length of detention for people detained under § 1226 as support for its constitutionality, reasoning that a six-week detention was the average and that a five-month detention counts as an outlier. 538 U.S. at 530.

40. I have been detained since June 14, 2024 , and have been detained for over twelve months. Since the length of my detention exceeds six months, the first factor weighs in my favor when determining whether my detention has become unreasonably prolonged.

41. The second factor considered is the question of which party is responsible for the detention being unreasonably prolonged. *Cabral*, 331 F. Supp. 3d at 261.

42. While a detained person who is found to be "abusing the processes provided to him" would bear the responsibility of their detention being prolonged, a detained person who "simply

made use of the statutorily permitted appeals process" cannot be made responsible for his prolonged detention. *Hechavarria v. Sessions*, 891 F. 3d 49, 56 n.6 (W.D.N.Y. 2018); see also *Hechavarria*, 2018 WL 5776421 at *7.

43. An immigration judge ordered me deported on October 30, 2024.

44. After being denied relief, I appealed my case to the Board of Immigration Appeals ("BIA") on approximately November 27, 2024, which also denied relief prompting me to appeal to the Second Circuit Court.

45. Factor two weighs in my favor as I have made use of the "statutorily permitted appeals process". *Id.*

46. Factor three weighs in my favor since I have asserted the following defense(s) to my removal: Protection under Convention Against Torture (CAT).

47. Factor five weighs in my favor because my detention at the BFDF is not meaningfully different from detention at a penal institution because it comprises many of the same restrictions that often accompany penal detention, including restrictions on movement and expectations to follow orders of presiding facility officers. See *Ranchinskiy*, 422 F. Supp. 3d at 799 (finding, absent rebuttal from the government, that detention at the BFDF is akin to criminal incarceration); *Gonzales Garcia v. Barr*, No. 6:19-CV-6327-EAW, 2020 WL 525377, at *15 (W.D.N.Y. Feb. 3, 2020) enforcement denied on other grounds sub nom. *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329 (W.D.N.Y. 2021) ("[T]he reality is that the [BFDF] houses [noncitizens] against their will with various restrictions on their freedom of movement. Thus, while perhaps not akin to a maximum-security prison . . . the facility does not seem meaningfully different from at least a low-security penal institution for criminal detention.").

48. Factor seven weighs in my favor because my case is ongoing.

49. Since a majority of the factors in the multi-factor test weigh in my favor, particularly factor one pertaining to the excessive length of my detention, there is sufficient evidence to conclude that my detention is unreasonably prolonged.

50. Once the Court has found that detention is unreasonably prolonged, it moves to the second step of the two-step inquiry, which asks what specific due process rights should be afforded. *Hechavarria*, 2018 WL 5776421 at *7-9.

**Because My Detention Has Been Unreasonably Prolonged and I Am Being Deprived of a Liberty Interest, Due Process Demands My Release or, at Minimum, That I Receive a Constitutionally Adequate Bond Hearing**

51. Due process demands "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

52. In *Mathews v. Eldridge*, the Supreme Court provided a three-factor test to weigh the constitutionality of administrative procedures: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). Each of the *Mathews* factors weighs heavily in favor of release or, at minimum, requiring a constitutionally adequate bond hearing once detention under 8 U.S.C. § 1226(c) has become

prolonged.

53. First, the importance and fundamental nature of an individual's liberty interest is well established. See *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment . . . lies at the heart of [] liberty . . . ."); *cf. Hechavarria*, 2018 WL 5776421 at *8 ("[T]his Court finds little difference between Hechavarria's detention and other instances where the government seeks the civil detention of an individual to effectuate a regulatory purpose.").

54. Here, the fundamental nature of freedom weighs in favor of my release. I completed my criminal sentence on June 24, 2024, and I have been detained by Respondents for over twelve months without any meaningful judicial review.

55. Second, the risk that my freedom will be erroneously deprived is significant. Crucially, I have no opportunity to challenge my detention because the statute mandates detention regardless of whether I am a flight risk or danger to the community. See *Jennings*, 138 S. Ct. at 844 (discussing the use of "may [detain]" and "shall [detain]" in the context of 8 U.S.C. § 1226 and the requirement of detention when the statute uses "shall.").

56. Furthermore, any internal process at DHS to determine whether release is warranted is not subject to review or challenge. Thus, there is a significant risk of erroneous, unwarranted detention, and the deprivation of my liberty interests. See e.g., *Hechavarria*, 2018 WL 5776421, at *8 ("[G]iven that the statute precludes any pre- or post-deprivation procedure to challenge the government's assumption that an immigrant is a danger to the community or a flight risk, it presents a significant risk of erroneously depriving [Petitioner] of life and liberty interests."); see also *Chi Thon Ngo*, 192 F.3d 390, 398-99 (3d Cir. 1999) ("To presume dangerousness to the

community and risk of flight based solely on his past record does not satisfy due process. . . . [P]resenting danger to the community at one point by committing crime does not place [a petitioner] forever beyond redemption.").

57. Finally, the procedure I propose—namely, requiring that the DHS prove to this court or, in the alternative, an immigration judge, that my continued detention is justified—does not meaningfully prejudice the government's interest in detaining dangerous noncitizens during removal proceedings. Instead, it serves just that purpose. See e.g., *Hechavarria*, 2018 WL 5776421 at *8 ("The government . . . contends that it has a regulatory interest in [petitioner's] detention pending removal based on his serious criminal history and risk of flight. This Court agrees that both of these interests may well be 'legitimate and compelling.' But those are the very interests that would be addressed at a detention hearing. So the government's continued assertion that [the petitioner] must be detained because he is dangerous simply begs the question and suggests exactly why a hearing is necessary.") (internal citations omitted).

58. As the Second Circuit articulated in *Velasco Lopez v. Decker*, once detention has become prolonged, it is in everyone's—the petitioner, the Government, and the public's—interest for the petitioner to receive a constitutionally adequate custody redetermination hearing. See 978 F.3d 842, 857 (2d Cir. 2020) ("The irony in this case is that, in the end, all interested parties prevailed. The Government has prevailed because it has no interest in the continued incarceration of an individual who it cannot show to be either a flight risk or a danger to his community. [The petitioner] has prevailed because he is no longer incarcerated. And the public's interest in seeing that individuals who need not be jailed are not incarcerated has been vindicated.").

59. In the immigration context, the only two valid justifications for detention are to mitigate

the risks of danger to the community and to prevent flight. See *Demore*, 538 U.S. at 531 (Kennedy, J., concurring) ("[T]he justification for 8 U.S.C. § 1226(c) is based upon the government's concerns over the risk of flight and danger to the community").

60. Given the gravity of the liberty deprivation when the government detains individuals, due process requires that the government bear the burden of proof by clear and convincing evidence for detaining an individual, particularly after that detention has become prolonged. *Cf. Velasco Lopez v. Decker*, 978 F.3d 842, 856 (2d Cir. 2020). (stating, for an 8 U.S.C. § 1226(a) prolonged detention claim, "it is in improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty. Accordingly, we conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection.").

61. Consistent with these principles, the WDNY has found that, where a particular detained person's mandatory detention becomes unreasonably prolonged, due process requires the government to show, by clear and convincing evidence, that continued detention is necessary because that detained person is a flight risk or is dangerous. *Jules v. Garland*, No. 21-CV-6342 CJS, 2021 WL 4973081, at *7 (W.D.N.Y. Oct. 26, 2021); see also *Campbell v. Barr*, 387 F. Supp. 3d 286, 300 (W.D.N.Y. 2019) ("To sustain the prolonged detention of [a noncitizen] subject to removal proceedings based on its general interests in immigration detention, the government is required, in a full-blown adversary hearing, to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person, or ensure that the [noncitizen] will appear for any future proceeding. This requires consideration of less restrictive alternatives to detention.") (internal

citations and quotation marks omitted); *Ranchinskiy*, 422 F. Supp. 3d at 800 ("[B]oth due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond.").

## CLAIM FOR RELIEF

### COUNT ONE:

### MY ONGOING DETENTION VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

62. I reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

63. Detained people who have been mandatorily detained in immigration detention for an unreasonably prolonged period must be released absent clear and convincing evidence that the detained person is dangerous or a flight risk, and that no conditions of release can reasonably mitigate that danger or flight risk.

64. For these reasons, my continued detention without, at minimum, a constitutionally adequate hearing violates due process..

### COUNT TWO:

### PETITIONER HAS AND IS BEING BEEN DENIED MEDICAL ATTENTION

65. I have been in detention for about 12 months and have been requesting medical attention for an extended period. Every time I make such request, it is denied. The medical attention I need in specific is because they (New York State Department of Corrections and Community Supervision [DOCCS] *inter alia*, including officials here at BFDF) conspired and planted

microchips throughout my body. This started shortly before I was transferred from DOCCS to ICE. These microchips had caused me, since I was in prison, and now in ICE to hear voices; particularly the voices of three people, which keep making it seem to medical here at BFDF like I have mental health issues. They used these microchips as monitoring devices, which, again, they placed throughout my body, including brain, which they by injected into my artery; and disperse thereafter throughout my body.

66. These devices had impaired my sleeping routine, causing me not to sleep at night; and this has been going on since January 22, 2024. I am only allowed to sleep whenever they decide and wake me up just alike. Furthermore, they force thoughts to my brain and make me dream about stuff they want; as well as, connected the devices to mimic my voice, to be used whenever voice recognition it necessary, i.e., to have conversations with my family, and other people I met while I was incarcerated. These conversations includes talking about illegal activities and trying to scare my family, so they can stop answering my phone calls from BFDF.

67. They have been doing what they want with me and I have reported this to the appropriate officials here at BFDF and also Office Inspector General ("OIG"); which never investigated or do anything about my claims. In all, I am very scared that they will use such control over me to make fake evidence in my immigration proceedings, and set me up for a conspiracy charges or any other unknown adverse stuff; and to make it seems like I am a danger to the community or a flight risk.

68. Just thinking of going back to Haiti with that device in my body scares me day after day. If they cannot take me to the hospital and have these devices removed, I hereby ask this court to have the Respondents release me on supervise release, so I could take my own self to the

hospital; because if I go back home with these microchips in my body then I could be physically trafficked.

69. This implantation of the devices hearing its three Haitians that stole my settlements checks from a litigations in the past; which they used fake ID(s) to cash and pay the DOCCS Correctional Officers from Riverview Correctional Facility to injected through my neck, so I do not get out of prison, so they can get away with everything they have done to me. Respectively, Haiti is a third-world country, where there is no adequate security and medical care for these type of medical events. The officials here at BFDF had refused over and over again to me a physical examination for my whole body; because they know what they did to me is insane; they joke and laugh about it every day, while I am in they custody dying. Thus, I am pray for the mercy of this Court to save my life from dying in ICE's custody, with these microchips in my body.

## PRAYER FOR RELIEF

WHEREFORE, I respectfully pray that this Court:

1. Assume jurisdiction over this matter;

2. Grant a Writ of Habeas Corpus directing the Respondent to release me from further unlawful detention, on a condition of supervision;

3. Enter preliminary and permanent injunctive relief enjoining Respondent from unlawfully detaining me any further;

4. In the alternative, issue a conditional writ of habeas corpus requiring Respondent to provide me with an individualized bond hearing before a neutral arbiter at which Respondent must bear the burden of establishing by clear and convincing evidence that my continued

detention is justified;

5. Order that in considering my detention, the Court should require respondents must consider alternatives to detention and my ability to pay when setting a monetary bond;

6. Order the Respondents not to transfer Petitioner outside the Western District of New York during the pendency of this Petition

7. Grant such further relief as the Court deems just and proper.

I affirm, under penalty of perjury, that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.

Respectfully submitted,

[signature]

Karl Henry Lucce, *Petitioner*
A# 062-348-065
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

DATED: 06-20-25
Batavia, New York

Karl Henry Lucce
A#: 062-348-065
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

$4.610
US POSTAGE IMI
FIRST-CLASS
063S0001436937
FROM 14020
B65776.23
stamps.com

Buffalo Federal Detention Facility

USDC - WDNY
JUN 26 2025
BUFFALO

To: Clerk of the Court
United States District Court
Western District of New York
Robert H. Jackson Courthouse
2 Niagara Square, Rm 200
Buffalo, New York 14202-3350

25 CV 6342-V

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Karl Henry Lucce

**DEFENDANTS**
Peter Sukmanowski in his official capacity as Acting Officer-in-Charge of the Buffalo Federal Detention Facility

(b) County of Residence of First Listed Plaintiff: Genesee County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Genesee County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Pro Se

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

TORTS

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

IMMIGRATION
- ☐ 462 Naturalization Application
- ☒ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. § 2241
Brief description of cause:
Ongoing detention violates due process

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE: 06-20-25
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

Print | Save As... | Export as FDF | Retrieve FDF File | Reset